United States Courts
Southern District of Texas
FILED

*April 05, 2024*

Nathan Ochsner, Clerk of Court

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **HORNBECK OFFSHORE OPERATORS, LLC,** | § | . |
| | § | |
| | § | |
| | § | |
| **VS.** | § | **C.A. NO. 4:24-CV-00056** |
| | § | |
| | § | |
| **BENTHIC LTD., A WHOLLY OWNED SUBSIDIARY OF ACTEON GROUP LIMITED** | § | |
| | § | |
| | § | **IN ADMIRALTY** |

### HORNBECK OFFSHORE OPERATORS, LLC'S
### FIRST SUPPLEMENTAL AND AMENDED COMPLAINT

NOW INTO COURT, through undersigned counsel, comes plaintiff, Hornbeck Offshore Operators, LLC, ("Hornbeck") and asserts claims for breach of maritime contract, promissory estoppel, and unjust enrichment against defendants, Benthic Ltd., a wholly owned subsidiary of Acteon Group Limited, and Benthic USA, LLC, as follows:

**Jurisdiction & Venue**

1.

The Court has subject-matter jurisdiction according to 28 U.S.C. § 1333 because this action involves a maritime contract. This case also presents an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2.

Venue is proper in this District because the underlying contract at issue, a BIMCO Supplytime 2017 time charter party with amendments agreed by the parties, contains a valid and enforceable choice-of-forum clause that chooses this District: "Any dispute arising out of or in

connection with this Charter Party shall be litigated in the United States District Court for the Southern District of Texas (Houston Division)."

3.

Further, Defendants, Benthic Ltd. and Benthic USA, LLC, (collectively referred to as "Benthic") negotiated the relevant contract with Plaintiff Hornbeck Offshore Operators, LLC ("Hornbeck") through individuals working out of Benthic's office located within the geographical jurisdiction of this Court; namely Houston, Texas. Specifically, Benthic, Ltd. has averred that Justin Carpenter, an employee of Benthic USA, LLC, based in Houston, Texas negotiated the terms of the contract at issue with Hornbeck. (Rec. Doc. No. 7-1 ¶ 4 at 1). Defendant Benthic USA, LLC's registered agent for service of process is likewise located out of that Houston office.

**Parties**

4.

Plaintiff, Hornbeck is a Delaware limited liability company with its principal place of business located in Covington, Louisiana.

5.

Defendant, Benthic Ltd. is, upon information and belief, a foreign company, organized and existing under the laws of England & Wales, with its principal place of business in Norwich, England, in the United Kingdom and doing business within the geographical jurisdiction of this Court.

6.

Defendant, Benthic USA, LLC is a Delaware limited liability company with its principal place of business located in Houston, Texas.

**Factual Background**

7.

Hornbeck is in the business of, among other things, providing offshore-supply vessel ("OSV") services to the international oil and gas industry.

8.

Benthic Ltd. and Benthic USA, LLC are related offshore seismic and geophysical service companies.

9.

The maritime contract in question is the time charter of the *HOS Strongline,* a U.S. flag OSV of Hornbeck's, which Benthic intended to utilize in connection with a geophysical survey campaign off the coast of Guyana, South America. In 2022, Benthic, Ltd. had chartered another Hornbeck vessel, the *HOS Brass Ring*, for similar work.

10.

While the *HOS Brass Ring* was still on charter in 2022, Benthic notified Hornbeck that it intended to perform additional geophysical survey work in September 2023, for which it would require the use of an OSV similar to the *HOS Brass Ring*.

11.

In January 2023, upon conclusion of Benthic's first survey campaign, Benthic redelivered the *HOS Brass Ring* to Hornbeck.

12.

In February 2023, Justin Carpenter, Benthic USA, LLC's Sales & Business Development Director and an authorized representative of Benthic Ltd. working out of Benthic's Houston office,

sent an email to Hornbeck soliciting Hornbeck's bid for the time charter of another OSV to be delivered in Port Fourchon, Louisiana, in September 2023, which was to be used in the next phase of Benthic's Guyana work.

13.

On May 17, 2023, Hornbeck sent Mr. Carpenter details on two available OSVs, the *HOS Renaissance* and *HOS Brass Ring*, which vessels met Benthic's requirements for the next phase of the Guyana work.

14.

As discussions between the parties proceeded, Hornbeck advised Benthic, through Mr. Carpenter, that the *HOS Brass Ring* and *HOS Renaissance* had become unavailable to perform the campaign and the focus became the time charter of the *HOS Strongline,* another Hornbeck OSV.

15.

On July 21, 2023, Justin Carpenter, acting on behalf of Benthic, sent a BIMCO contract for the use of the *HOS Strongline* "based on the CPA ["charter party agreement" *i.e.* the BIMCO contract] last year for the *Brass Ring*, with a few changes of course." The BIMCO form was a BIMCO 2017 Supplytime time charter, which was the same form used for the prior *HOS Brass Ring* contract. The BIMCO Supplytime 2017 form is widely used in the offshore energy industry in which both Benthic and Hornbeck participate.

16.

Consistent with Carpenter's comment transcribed above and the custom in the maritime industry, the parties used the prior *HOS Brass Ring* contract as a starting point, thus narrowing the issues that needed to be negotiated prior to the chartering of the *HOS Strongline* for the second round of Guyana work. The "few changes" (referenced by Carpenter above) were primarily

commercial and operational particulars (*i.e.,* the identity of the new vessel, the "day rate," the start date, and the length of the charter). Additional changes in the proposed BIMCO related to a limitation of consequential losses, a lien provision, a preferred vendor agreement and "language regarding navigation in prohibited waters."

17.

On August 1, 2023, Kevin Douglass of Hornbeck sent Carpenter Hornbeck's initial comments to the BIMCO and that same day, Carpenter responded that he would review Hornbeck's comments with Benthic's legal department the next day.

18.

On August 4, 2023, Mr. Carpenter e-mailed Mr. Douglass an "updated BIMCO."

19.

On August 8, 2023, Douglass e-mailed Carpenter regarding the August 4 BIMCO draft stating: "I think we are pretty much closed out with the exception of the Lien provisions."

20.

On August 21, 2023, Carpenter texted Jason Dennis of Hornbeck that one of Hornbeck's competitors, Bordelon Marine, was "posturing" with lower rates and Benthic was considering repudiating its agreement with Hornbeck in order to take advantage of those lower rates.  More specifically, the two exchanged a number of text messages stating:

| | |
|---|---|
| Carpenter: | "Bordelon is posturing to take this other charter. Looking to get ops buy in on HOS vessel options." |
| Dennis: | "Ok, buzz back. Have something to discuss. Just to be clear, we have a deal on the Strongline at 47.5K." |
| Carpenter: | "Understood on Strongline." |

- 5 -

By this time, all essential terms of the time charter for the *HOS Strongline* had been agreed by the parties, including the vessel, the daily operating rate of $47,500 USD, the term of the charter of 110 days, the location of delivery and re-delivery at Port Fourchon, Louisiana and the scope of work. A fixture therefore was in place.

21.

On August 24, 2023, Benthic and Hornbeck had a telephone conference to discuss the few open minor details for the BIMCO form. During this call, although a fixture was already in place, the parties reached an agreement as to all remaining terms of the contract. This was confirmed on August 28, 2023, during a Microsoft Teams meeting between Jason Dennis of Hornbeck and Justin Carpenter of Benthic, during which Carpenter reiterated that Benthic was moving forward on the contract with Hornbeck rather than other potential competitors, including Bordelon.

22.

In reliance on Benthic's representations, Hornbeck kept the *HOS Strongline* off the market and reserved it for Benthic's use.

23.

On August 31, 2023, while the parties were in the process of finalizing administrative matters so that the contract could be signed, Benthic repudiated the time charter of the *HOS Strongline* and advised Hornbeck of its intention to move forward with a the less expensive vessel provided by Bordelon Marine.

24.

On September 1, 2023, Hornbeck sent a formal written demand letter to Benthic, Ltd. stating that Benthic was in breach of the parties' contract and requesting that Benthic honor the agreement.

25.

By letter dated September 13, 2023, Jason Mayberry, Group Legal Counsel for Acteon Group Ltd, responded on behalf of Benthic, Ltd. and denied any obligation to proceed with the time charter of the *HOS Strongline*.  Although Mr. Mayberry's letter is on Benthic, Ltd. letterhead and lists an address for Benthic, Ltd. in England, upon information and belief, Mr. Mayberry's office is in Houston, Texas, where he acts on behalf of Benthic, Ltd. and other members of Acteon Group Ltd.

**Count I: Breach of Contract**

26.

Hornbeck adopts, realleges, and incorporates the preceding allegations of this First Amended and Supplemental Complaint, as if copied herein in extenso.

27.

By August 21, 2023, Hornbeck and Benthic had entered into a binding fixture and enforceable time charter for the *HOS Strongline* for a firm term of 110 days at an operational day rate of $47,500 USD per day, net of taxes.

28.

Hornbeck complied with its obligations under the charter by setting aside the *HOS Strongline* for Benthic's use: the *HOS Strongline* was standing by in Port Fourchon, Louisiana, ready to be delivered during the contractually agreed delivery window.

29.

Benthic, however, refused to perform its obligations under the charter of the *HOS Strongline,* and refused to accept delivery of the vessel.

30.

Benthic's refusal to perform constitutes a breach of the parties' contract for which it is liable in damages to Hornbeck.

31.

In reliance on Benthic's agreement to charter the *HOS Strongline* under the terms and specifications agreed to by the parties, Hornbeck withdrew the vessel from the active market, and thus missed opportunities to find other, gainful employment for the vessel.

32.

Hornbeck has been damaged by Benthic's breach of contract in amounts that will be shown at trial, including but not limited to, lost profits and loss of business opportunities.

**Count II: Bad Faith Breach of Contract**

33.

Hornbeck adopts, realleges, and incorporates the preceding allegations of this First Amended and Supplemental Complaint, as if copied herein *in extenso*.

34.

Benthic's intentional breach of the time charter of the *HOS Strongline* without any legitimate basis and with prior knowledge constitutes bad faith.

35.

Hornbeck, therefore, is entitled to recover all of its damages, foreseeable or not, caused by Benthic's bad faith breach of the time charter of the *HOS Strongline*, including but not limited to costs and attorneys' fees.

**Count III: Detrimental Reliance**

36.

Hornbeck adopts, realleges, and incorporates the preceding allegations of this First Amended and Supplemental Complaint, as if copied herein in extenso.

37.

Benthic made written and verbal representations to Hornbeck that Benthic would charter the *HOS Strongline* from Hornbeck for a period of 110 days at an operational day rate of $47,500 USD per day, net of taxes, per day, with interest on late payments at 1% per month.

38.

Hornbeck reasonably relied on those representations and changed its position to its detriment.

39.

Benthic knew or should have known that its representations would induce Hornbeck to rely on it to its detriment.

40.

As a result of Benthic's representations, Hornbeck has sustained substantial damages, in amounts that will be shown at trial, for which Benthic is liable, including but not limited to lost profits and loss of business opportunities.

**Count IV: Unjust Enrichment**

41.

Hornbeck adopts, realleges, and incorporates the preceding allegations of this First Amended and Supplemental Complaint, as if copied herein *in extenso*.

42.

If Hornbeck does not have a remedy at law that will permit recovery from Benthic, then Hornbeck is entitled to recover based upon enrichment without cause.

43.

Hornbeck was impoverished by the wrongful conduct of Benthic.

44.

Benthic has been enriched without cause at the expense of Hornbeck.

45.

No valid justification exists for the enrichment of Benthic.

46.

By virtue of its enrichment without cause, Benthic is bound to compensate Hornbeck for its damages in amounts that will be shown at trial, including but not limited to lost profits and loss of business opportunities.

WHEREFORE, plaintiff, Hornbeck Offshore Operators, LLC, prays that, after due proceedings are had, Judgment be entered in its favor and against defendants, Benthic, Ltd. and Benthic USA, LLC for damages, attorney's fees, legal interest, and all costs in the amounts shown at trial, as well as such other legal and/or equitable relief as the Court deems appropriate.

Respectfully Submitted,

LUGENBUHL, WHEATON, PECK,
RANKIN & HUBBARD

s/ *Adelaida J. Ferchmin*
Adelaida J. Ferchmin (S.D. Tex. Bar No. 3466268)
aferchmin@lawla.com
David B. Sharpe (S.D. Tex. Bar No. 145148)
dsharpe@lawla.com
601 Poydras Street, Suite 2775
New Orleans, LA  70130
Telephone: (504) 568-1990
Facsimile: (504) 310-9195
Counsel for plaintiff,
Hornbeck Offshore Operators, LLC