**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **HORNBECK OFFSHORE** | § | . |
| **OPERATORS, LLC,** | § | |
| | § | |
| | § | |
| **VS.** | § | **C.A. NO. 4:24-CV-00056** |
| | § | |
| | § | |
| **BENTHIC LTD., A WHOLLY** | § | |
| **OWNED SUBSIDARY OF** | § | |
| **ACTEON GROUP LIMITED** | § | **IN ADMIRALTY** |

**PLAINTIFF HORNBECK OFFSHORE OPERATORS, LLC'S**
**MEMORANDUM IN OPPOSITION TO DEFENDANT BENTHIC UK's**
**MOTION TO DISMISS**

**NOW COMES**, Plaintiff, Hornbeck Offshore Operators, LLC ("Hornbeck"),

who respectfully submits this memorandum in opposition to Defendant Benthic

Ltd.'s ("Benthic UK") Motion to Dismiss pursuant to Federal Rules of Civil

Procedure 12(b)(2), (lack of personal jurisdiction), 12(b)(4), (insufficient process),

and 12(b)(5) (insufficient service of process).[1]

## I.    SUMMARY OF THE ARGUMENT

Benthic UK asserts that this Honorable Court lacks personal jurisdiction in

spite of Benthic UK's numerous and admitted ties to Texas, including: (1) the use of

its affiliate Benthic USA, LLC's ("Benthic USA") Houston office to conduct

---

[1] Rec. Doc. 7.

business and originate all business communications with Hornbeck; (2) authorizing Justin Carpenter, an employee of Benthic USA, LLC,  to negotiate the contract at issue on behalf of Benthic UK from Benthic USA's Houston office; (3) purposely including a Texas choice of forum provision in both the contract at issue in this case and in the maritime contract between the parties immediately preceding the contract at issue; and (4) designating Mr. Carpenter, who again is based in Houston, as the contact person in both the underlying contract and the previous maritime contract entered into with Hornbeck.  Benthic UK's argument that it lacks the minimum contacts with Texas is belied by the, at best, porous identities of Benthic, UK and Benthic USA and its actual appointment of a Houston based employee to represent Benthic UK during negotiations. Accordingly, as discussed in more detail below, Defendant has availed itself of the benefits of doing business in Texas and created sufficient contacts with this State so as to bestow this Honorable Court with specific personal jurisdiction over Benthic UK.[2]

Defendant's additional arguments seeking dismissal of Plaintiff's Complaint on the bases of improper summons and insufficient service of process under Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5) are moot or premature.  Plaintiff

---

[2] For purposes of this memorandum in opposition, Hornbeck is not asserting that Benthic UK is subject to general jurisdiction.

recently requested, and the Clerk of Court issued, a summons to Benthic Ltd.[3]
Plaintiff has commenced the lengthy process of serving the summons on
Defendant's registered agent in the United Kingdom pursuant to the Hague
Convention on the Service Abroad. Service through the Hague Convention routinely
takes several months to complete. However, as this is service being made in a foreign
country, Rule 4(m), "Time Limit for Service", is inapplicable to the present matter,
and Plaintiff has not exhausted any time limit in which to serve Benthic Ltd. via the
Hague Convention. For these reasons, dismissal of Plaintiff's Complaint under Rule
12(b)(4) and/or Rule 12(b)(5) is moot or premature at this stage in the proceedings.[4]

## II.    FACTUAL BACKGROUND

Hornbeck is in the business of, among other things, providing offshore-supply
vessel ("OSV") services to the international oil and gas industry.[5] Benthic UK, is a
foreign offshore seismic and geophysical service company.[6] The maritime contract
at issue in this suit is the time charter of the HOS Strongline, a U.S. flag OSV owned
by Hornbeck, which Benthic UK intended to utilize in connection with a geophysical
survey campaign off the coast of Guyana, South America.[7] Benthic, UK had

---

[3] (Rec. Doc. No. 14).
[4] Plaintiff recently moved this Honorable Court for leave to file a First Supplemental and Amended Complaint adding Benthic USA as a defendant. (Rec. Doc. No. 16). It is undisputed that Benthic USA is subject to this Court's personal jurisdiction. Accordingly, this action will remain before the Court as to Benthic USA, Ltd. to the extent the Court grants Plaintiff's pending Motion for Leave Amend its Complaint.
[5] Rec. Doc. No. 1 at ¶ 6.
[6] Rec. Doc. No. 1 at ¶ 7.
[7] *See* fixture for the HOS Strongline attached hereto as Exhibit A.

previously chartered a different OSV owned by Hornbeck, HOS Brass Ring, for use in the same project off the coast of Guyana.[8] While the HOS Brass Ring was still on charter in 2022, Benthic UK notified Hornbeck that it intended to perform additional geophysical survey work in September 2023, for which it would require the use of an OSV similar to the HOS Brass Ring. In January 2023, upon conclusion of Benthic UK's first survey campaign, Benthic UK redelivered the HOS Brass Ring to Hornbeck pursuant to the terms of the relevant charter agreement. In February 2023, Justin Carpenter, Benthic's Sales & Business Development Director and an authorized representative of Benthic, UK. employed by Benthic USA and working out of Benthic USA's Houston office, contacted Hornbeck soliciting Hornbeck's bid for the time charter of another OSV to be delivered in September 2023, for use in the next phase of Benthic's Guyana work. On May 17, 2023, Hornbeck sent Mr. Carpenter details on two available OSVs, the HOS Renaissance and HOS Brass Ring. As discussions between Hornbeck and Benthic UK. continued, Hornbeck advised Benthic, UK. that the HOS Brass Ring and HOS Renaissance had become unavailable and the parties shifted their focus to chartering the HOS Strongline. On July 21, 2023, Mr. Carpenter sent Hornbeck a BIMCO contract for the use of the HOS Strongline "based on the CPA ["charter party agreement" i.e. the BIMCO

---

[8] *See* charter agreement for the HOS Brass Ring attached hereto as Exhibit B.

contract] last year for the Brass Ring, with a few changes of course."[9] The BIMCO form was a BIMCO 2017 Supplytime time charter, which was the same form used for the prior HOS Brass Ring contract.[10]  The BIMCO form sent by Mr. Carpenter to Hornbeck on July 21, 2023 as a starting point for the HOS Strongline charter agreement included the same dispute resolution clause the parties had previously agreed to, in connection with the time charter of the HOS Brass Ring.[11] This dispute resolution clause provided that all disputes arising out of or in connection with the charter agreement would be litigated in the United States District Court for the Southern District of Texas while also striking out the standard English or Singapore law and forum provisions:

### 1.    BIMCO Dispute Resolution Clause 2016

(a)    *    ~~This Charter Party shall be governed by and construed in accordance with English law and any dispute arising out of~~ or in connection with this Charter Party shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give ~~effect to the provisions of this Clause.~~

~~The arbitration shall be conducted in accordance with the London Maritime Arbitrators Association (LMAA)~~ ~~Terms current at the time when the arbitration proceedings are commenced.~~

~~The reference shall be to three arbitrators. A party wishing to refer a dispute to arbitration shall appoint its arbitrator and send notice of such appointment in writing to the other party requiring the other party to appointits own arbitrator within fourteen (14) calendar days of that notice and stating that it will appoint its arbitrator~~

---

[9] *See* email correspondence from Justin Carpenter dated July 21, 2023 attached hereto as Exhibit C.
[10] The BIMCO Supplytime 2017 form is widely used in the offshore energy industry in which both Benthic and Hornbeck participate.
[11] *See* clause 37(b) of Exhibit A and Exhibit B.

as sole arbitrator unless the other party appoints its own arbitrator and gives notice that it has done so within the fourteen (14) days specified. If the other party does not appoint its own arbitrator and give notice that it has done so within the fourteen (14) days specified, the party referring a dispute to arbitration may, without the requirement of any further prior notice to the other party, appoint its arbitrator as sole arbitrator and shall advise the other party accordingly. The award of the sole arbitrator shall be binding on both Parties as if he had been appointed by agreement.

Nothing herein shall prevent the Parties agreeing in writing to vary these provisions to provide for the appointment of a sole arbitrator.

In cases where neither the claim nor any counterclaim exceeds the sum of USD 100,000 (or such other sum as the Parties may agree) the arbitration shall be conducted in accordance with the LMAA Small Claims Procedure current at the time when the arbitration proceedings are commenced.

(b)*  This Charter Party shall be governed by U.S. maritime law or, if this Charter Party is not a maritime contract under U.S. law, by the laws of the State of New York Texas, excluding its conflicts of law provisions. Any dispute arising out of or in connection with this Charter Party shall be litigated in the United States District Court for the Southern District of Texas (Houston Division) referred to three (3) persons at New York, one to be appointed by each of the Parties hereto, and the third by the two so chosen. The decision of the arbitrators or any two of them shall be final, and for the purposes of enforcing any award, judgment may be entered on an award by any court of competent jurisdiction. The proceedings shall be conducted in accordance with the SMA Rules current as of the date of this Charter Party.

On August 1, 2023, Kevin Douglass of Hornbeck sent Mr. Carpenter, Hornbeck's initial comments to the BIMCO and Carpenter responded that he would review Hornbeck's comments with Benthic's legal department the next day. On August 4, 2023, Mr. Carpenter e-mailed Mr. Douglass an "updated BIMCO."

Importantly, the August 4, 2023 "updated BIMCO" retained the Texas forum provision in the dispute resolution clause.[12]  The parties never changed that clause and it remains in the charter fixture that Hornbeck seeks to enforce in this action.

On August 8, 2023, Douglass e-mailed Carpenter regarding the August 4 BIMCO draft stating: "I think we are pretty much closed out with the exception of the Lien provisions."[13] On August 21, 2023, Carpenter texted Jason Dennis of Hornbeck that one of Hornbeck's competitors, Bordelon Marine, was "posturing" with lower rates and Benthic UK was considering repudiating its agreement with Hornbeck in order to take advantage of those lower rates. More specifically, the two exchanged a number of text messages stating:

> Carpenter:  "Bordelon is posturing to take this other charter. Looking to get ops buy in on HOS vessel options."
>
> Dennis:  "Ok, buzz back. Have something to discuss. Just to be clear, we have a deal on the Strongline at 47.5K."
>
> Carpenter:  "Understood on Strongline."

By this time, all essential terms of the time charter for the HOS Strongline had been agreed by the parties, including the Texas choice of forum provision. A fixture

---

[12] *See* email correspondence from Justin Carpenter dated August 4, 2023 and August 8, 2023 response attached hereto as Exhibit D.
[13] *Id*.

therefore was in place. On August 24, 2023, Benthic and Hornbeck had a telephone conference to discuss the few open minor details for the BIMCO form. During this call, although a fixture was already in place, the parties reached an agreement as to all remaining terms of the contract. This was confirmed on August 28, 2023, during a Microsoft Teams meeting between Jason Dennis of Hornbeck and Justin Carpenter of Benthic, during which Carpenter reiterated that Benthic UK was moving forward on the contract with Hornbeck rather than other potential competitors, including Bordelon. At no point during the parties' negotiations did Mr. Carpenter, or any other representative of Benthic. UK, object to or otherwise sought to modify the existing Texas choice of forum provision incorporated in the fixture.

In reliance on Benthic's representations, Hornbeck kept the HOS Strongline off the market and reserved it for Benthic's use. On August 31, 2023, while the parties were in the process of finalizing administrative matters so that the contract could be signed, Benthic UK, through its representative Mr. Carpenter, repudiated from Texas, the time charter of the HOS Strongline and advised Hornbeck of its intention to move forward with a the less expensive vessel provided by Bordelon Marine. On September 1, 2023, Hornbeck sent a formal written demand letter to Benthic UK stating that Benthic UK was in breach of the parties' contract and requesting that Benthic UK honor the agreement. By letter dated September 13,

2023, Jason Mayberry, Group Legal Counsel for Acteon Group Ltd, responded on behalf of Benthic UK and denied any obligation to proceed with the time charter of the HOS Strongline.[14] Although Mr. Mayberry's letter is on Benthic UK letterhead and lists an address for Benthic UK in England, upon information and belief, Mr. Mayberry's office is in Houston, Texas, where he acts on behalf of Benthic UK and other members of Acteon Group Ltd.

## II.    LAW AND ARGUMENT

### A.    Standard of Review

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the District Court can exercise personal jurisdiction over the defendant.[15] On a motion to dismiss for lack of jurisdiction, "uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists.[16] "Proof by preponderance of the evidence is not required."[17] As specific personal jurisdiction is necessarily created by a party's

---

[14] *See* correspondence from Jason Mayberry dated September 13, 2023 attached hereto as Exhibit E.
[15] *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 671 (S.D. Tex. 2014) (citing *Luv N' Care, Ltd. v. Insta-Mix, Inc.,* 438 F.3d 465, 469 (5th Cir. 2006)); *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 592 (5th Cir. 1999).
[16] *JMF Med., LLC v. Team Health, LLC*, 490 F. Supp. 3d 947, 966 (M.D. La. 2020) (citing *Johnston v. Multidata Systems Intern. Corp.,* 523 F.3d 602, 609 (5th Cir. 2008)).
[17] *Id.*

conduct, the courts must determine if specific personal jurisdiction exists on a case-by-case basis after a factual inquiry into the pleadings, exhibits, affidavits, and other information presented.

### B.   Benthic Ltd. is subject to specific personal jurisdiction in Texas

The parties largely agree on the relevant legal standards. In an admiralty case, the law of the forum state determines whether exercising personal jurisdiction over a nonresident defendant, such as Benthic UK, is appropriate.[18] "A federal district court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment."[19] In this matter, only the second prong needs to be analyzed as "the Texas long-arm statute permits the exercise of jurisdiction over a nonresident defendant to the fullest extent allowed by the United States Constitution."[20]

A court may exercise specific jurisdiction when (1) "the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there;" and (2) "the controversy arises out of or is

---

[18] *Freudensprung v. Offshore Tech. Servs.,* Inc., 379 F.3d 327, 343 (5th Cir. 2004).
[19] *Freudensprung,* 379 F.3d at 343 (citing *Nuovo Pignone, SpA v. STORMAN ASIA M/V,* 310 F.3d 374, 378 (5th Cir.2002); *Adams v. Unione Mediterranea Di Sicurta,* 220 F.3d 659, 667 (5th Cir.2000).
[20] *Ruston Gas Turbines,* 9 F.3d at 417–418.

related to the defendant's contacts with the forum state."[21] The Fifth Circuit has concluded that specific personal jurisdiction is determined on an individual and claim-by-claim basis and has established a three-step analysis for determining whether specific jurisdiction exists. Namely, here the Court must examine: (1) whether Benthic UK has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether Hornbeck's cause of action arises out of or results from Benthic, UK's forum related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.[22]

"The 'constitutional touchstone' of the inquiry to determine if personal jurisdiction can be exercised is whether the defendant 'purposefully established minimum contacts in the forum State.'"[23] "[A] single purposeful contact is sufficient to confer personal jurisdiction if the cause of action arises from the contact."[24] In order to determine whether a defendant has purposefully availed himself of the privilege of conducting activities within this forum, the Court must consider the "relationship between the cause of action and the contacts."[25] When deciding

---

[21] *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Asarco, Inc. v. Glenara, Ltd.,* 912 F.2d 784 (5th Cir.1990)).
[22] *Evergreen*, 68 F. Supp. at 675.
[23] *Seiferth*, 472 F.3d at 271 (quoting *Asahi Metal Ind. Co. v. Super. Ct.,* 480 U.S. 102, 108–09 (1987)).
[24] *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 379 (5th Cir. 2002) (reversed in part on other grounds) (citing *McGee v. Int'l Life Ins. Co*., 355 U.S. 220, 222, 78 S. Ct. 199, 2 L. Ed. 2d 223 (1957)).
[25] *Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1268 (5th Cir. 1981).

whether minimum contacts with the forum state arose from a contract, the Court will evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing."[26] The defendant's connection with the forum state must be such that he "should reasonably anticipate being haled into court" there.[27]

Here, Benthic UK intentionally and knowingly entered into a contract with Hornbeck, which included and contemplated a forum selection clause that set the exclusive forum as the Southern District of Texas, Houston Division.[28]  Further, Benthic UK  purposefully established minimum contacts in the State of Texas in order to conduct its business through its use of Benthic USA as an authorized agent for negotiating the contract at issue. Specifically, at all times relevant to the contract at issue in this matter, negotiations on behalf of Benthic UK were almost exclusively performed by Justin Carpenter, Benthic's Sales & Business Development Director employed by Benthic USA, LLC and working out of Benthic's Houston office. Indeed, Benthic UK has admitted that Mr. Carpenter had actual authority to represent Benthic UK during the HOS Strongline charter negotiations. "The purported contract at issue was primarily negotiated by Justin Carpenter, and employee of

---

[26] *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).
[27] *Id.*
[28] *See* clause 37(b) of Exhibit A and Exhibit B.

Benthic USA, LLC."[29] "It is undisputed that Justin Carpenter negotiated with Hornbeck on behalf of Benthic, Ltd. from Houston, Texas."[30] Benthic UK's repudiation of the contract was also done from Houston through Mr. Carpenter.

Moreover, Benthic, UK had previously consented to the forum selection of the Southern District of Texas. As discussed above, the maritime contract between Hornbeck and Benthic, UK. immediately preceding the contract at issue in this matter was used as a template for this second contract. Included in that original contract between Benthic UK and Hornbeck was a dispute resolution clause that provided that "[a]ny dispute arising out of or in connection with this Charter party shall be litigated in the United States District Court for the Southern District of Texas (Houston Division)."[31]  The same clause was adopted verbatim in the contract at issue here. Further, Justin Carpenter, was identified as the contact person for Benthic UK in both maritime contracts between the parties.[32] Benthic UK cannot argue that it has no contacts or connection with Texas while also using a Texas based company as its agent to negotiate contracts and voluntarily submit to the Southern District of Texas in said contracts negotiated out of Texas.

### C.    Exercising Personal Jurisdiction would be consistent with the traditional notions of fair play and substantial justice

---

[29] (Rec. Doc. No. 7-1 at ¶ 2).
[30] (Rec. Doc. No. 7 at pg. 11).
[31] Rec. Doc. 1 at ¶ 2.
[32] *See* box 3 of BIMCO SUPPLYTIME 2017 for both Exhibit A and Exhibit B.

It is wholly consistent with the traditional notions of fair play and substantial justice for Benthic, UK to be haled into a Texas court for the resolution of a breach of contract claim concerning a contract that would have specifically included a forum selection clause, consenting to the jurisdiction of the Southern District of Texas.[33]  As discussed above, the first maritime contract between Benthic UK and Hornbeck included the same forum selection clause. The contract at issue here was negotiated and drafted using the first contract as a template, and unless Benthic UK had cancelled the contract prior to executing it, this matter would indisputably be under the jurisdiction of the Southern District of Texas. Moreover, Benthic UK relies on what is calls the "draft" charter for jurisdictional facts, like the anticipated delivery of the HOS Strongline in Louisiana for performance in Guyana.[34] As the contract at issue included a Texas  forum selection clause, Hornbeck reasonably sought relief in a Texas forum. Assuredly, seeking to enforce the breach of contract in any other venue would have resulted in Benthic UK taking the opposing position, that the only proper venue was the Southern District of Texas as the parties agreed to such under the contract. Lastly, it would not be inconsistent with any fundamental social policies for Benthic UK to be haled into the Texas court it chose.

Whether the exercise of personal jurisdiction is unfair or unreasonable is

---

[33] *See* Clause 37(b) of Exhibit A.
[34] (Rec. Doc. No. 7 at pg. 11).

examined under five factors: "(1) the burden on the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental social policies."[35] As evidenced by Benthic's operations in Texas, Benthic UK would not suffer any additional burden should it have to litigate this matter in this Court. Moreover, Texas has an interest in ensuring that foreign companies such as Benthic, UK can be held accountable for any negative consequences arising from or related to their use of Texas based affiliates, employees and/or infrastructure to conduct business within the state.

Further, the principal cases cited by Benthic UK in support of lack of personal jurisdiction are distinguishable, yet they support the Court's exercise of specific personal jurisdiction here. Like most cases involving a dispute over specific jurisdiction, *Holt*, *Moncrief Oil*, and *Evergreen Media* all involved Texas plaintiffs who were trying to hale non-resident defendants into Texas court. Here, the situation is different: a non-resident plaintiff (Hornbeck) is seeking to hale another non-resident (Benthic UK) into Texas based upon a Texas dispute-resolution clause proposed by Benthic UK through its authorized agent (Mr. Carpenter at Benthic

---

[35] *STORMAN ASIA M/V*, 310 F.3d at 378.

USA) in Texas.  And by naming Mr. Carpenter as Benthic UK's representative to receive notices under the charter (Part. I, Box 3), Benthic UK reinforced its pre-dispute contacts with Houston. When Benthic UK decided to repudiate the charter, that repudiation also came from its agent in Houston.  Benthic UK's contacts with Hornbeck through Benthic USA's Houston office were no mere fortuity.

*Holt* and *Moncrief Oil* also support Hornbeck's contentions that the Texas dispute-resolution clause (which also contained a Texas choice-of-law clause, as an alternative to maritime law) is an important jurisdictional contact.  In both *Holt* and *Moncrief Oil*, the Fifth Circuit emphasized that the contracts at issue would not be governed by Texas law.[36]  This Court should exercise personal jurisdiction over Benthic UK because Benthic UK's allegations in their motion do not sufficiently rebut or deny the facts presented by Plaintiff that tend to show that Benthic UK has minimum contacts with Texas or that the subject of this lawsuit arose out of such contacts.

### D.    Benthic UK's arguments concerning Rules 12(b)(4) and 12(b)(5) are moot

Benthic UK has also moved for dismissal on the basis of Rules 12(b)(4) and 12(b)(5), arguing that the there has been insufficient process and insufficient service

---

[36] *Holt*, 801 F.2d at 778 ("Although the contractual relationship … may have been cemented in Texas, the significance of this fact is diminished by the contract provision specifying that Oklahoma law would govern the agreement."); *Moncrief Oil*, 481 F.3d at 313 ("Perhaps most significantly, the Cooperation Agreement – which cemented the earlier agreements between the parties – included clauses calling for mandatory arbitration in Russia, under Russian law.").

of process upon them in this matter. Even accepting all of Benthic UK's arguments as true (solely for the purposes of this opposition), by Benthic UK's own allegation or admission it is a company that is created under the laws of England and Wales and is located therein. Plaintiff has begun the process of serving Benthic UK through the Hague Convention, pursuant to Federal Rule of Civil Procedure 4(f). As this is service being made in a foreign country, Rule 4(m), "Time Limit for Service", is inapplicable to the present matter, and Hornbeck has not exhausted any time limit in which to serve Benthic UK via the Hague Convention. Therefore, any arguments made by Benthic UK for dismissal on the basis of Rules 12(b)(4) and 12(b)(5) are premature and moot, as service is in the process of being made and no time limit to complete that process has been exceeded.

### E.    In the alternative, Hornbeck requests the Court allow limited jurisdictional discovery

Hornbeck maintains that there is sufficient evidence of Benthic UK's minimum contacts with Texas to warrant specific jurisdiction in this matter. However, to the extent any doubt remains as to the nature and scope of Benthic UK's contacts with Texas, Hornbeck respectfully requests the Court grant it limited discovery in order to definitively prove that Benthic UK purposefully availed itself of the benefits and protections of Texas by establishing "minimum contacts" with this state. A plaintiff faced with a motion to dismiss for lack of personal

jurisdiction is entitled to reasonable discovery if the motion to dismiss raises issues of fact.[37]

As aptly stated by the United States Court of Appeals for the D.C. Circuit, "[a] plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum."[38]   The Fifth Circuit has repeatedly reversed dismissals for lack of personal jurisdiction on the ground that the plaintiff was improperly denied discovery.[39] Here, in order to further establish Benthic UK's contacts with Texas,  Hornbeck would request leave to depose Benthic representatives Justin Carpenter and Jason Mayberry, both based in Houston, Texas as well as affiant Jonathan Watt regarding the nature and scope of their relationship with  Benthic, UK and Benthic USA and the scope of their authority to represent Benthic UK in negotiations with Hornbeck for the contract at issue.  In addition, Hornbeck would request production of Benthic UK and Benthic USA internal written correspondence regarding Mr. Carpenter's authority to represent Benthic UK and the scope of his job duties within the Benthic family of

---

[37] *See Walk Haydel & Assocs., Inc. v. Coastal Power Production Co.,* 517 F.3d 235, 241 (5th Cir. 2008); *Wyatt v. Kaplan,* 686 F.2d 276, 283 (5th Cir. 1982).

[38] *El-Fadl v. Cent. Bank of Jordan,* 75 F.3d 668, 676 (D.C.Cir.1996).

[39] *Wyatt,* 686 F.2d at 283, citing *Skidmore v. Syntex Laboratories, Inc.*, 529 F.2d 1244, 1248-49 (5th Cir. 1976) (holding "the district court acted too drastically in entering its order of dismissal without giving plaintiff a further opportunity for discovery" though defendants had answered 184 interrogatories); *Littlejohn v. Shell Oil Co.*, 483 F.2d 1140, 1146 (5th Cir. 1973) (en banc) (reversing denial of jurisdictional discovery though the plaintiff had agreed in writing that discovery would not take place until after the district court had ruled on defendants' motion to dismiss).

companies.  Hornbeck's proposed discovery would be limited to issues related to personal jurisdiction over Benthic UK and would not be aimed at resolving the merits of the underlying claim.

### F.    In the further alternative, this matter should be transferred to the United States District Court for the Eastern District of Louisiana

Hornbeck maintains that this Honorable Court has personal jurisdiction over Benthic, UK and is the proper forum for this matter as evidenced by the dispute resolution clause incorporated in the contract at issue as well as Benthic UK's authorized representative's presence in Houston, Texas.  However, even if the Court determines that this matter should not be adjudicated in the district court for the Southern District of Texas, Hornbeck's claims should be transferred to the district court for the Eastern District of Louisiana rather than dismissed outright.  Indeed, in its Motion to Dismiss Benthic UK suggested that Hornbeck could seek relief for its claims against Benthic UK in the Eastern District of Louisiana. "Likewise, Hornbeck does not have any particular interest in seeking relief in a Texas forum because it is a Delaware limited liability company with its principal place of business in Covington, Louisiana, and it could just as easily seek relief in one of those jurisdictions or in the United Kingdom, where Benthic Ltd. is located."[40]

A Court may transfer an action to another district court *sua sponte* if it determines that doing so would be more convenient for the parties and in the interest of justice. 28 U.S.C. §1404(a).[41] Section 1404(a) provides the general framework for this Court's consideration of the requested transfer: "For the convenience of parties

---

[40] (Rec. Doc. No. 7 at pg. 14).

[41] *See Schutter v. Herskowitz*, Civil Action No. 06-1846 (RMC), 2007 WL 1954416, at *6 n.3 (D.D.C. July 5, 2007).

and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  In addition, the Court may also transfer this matter to the district court for the Eastern District of Louisiana under the provisions of 28 U.S.C. §1631 in order to cure any lack of personal jurisdiction.[42]

## IV.  CONCLUSION

For the reasons stated above, Benthic UK should be subject to specific personal jurisdiction in Texas and Benthic UK's Motion should be dismissed.

Respectfully submitted,

LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD

/s/ Adelaida J. Ferchmin
Adelaida J. Ferchmin (S.D. Tex. Bar No. 3466268)
aferchmin@lawla.com
David B. Sharpe (S.D. Tex. Bar No. 145148)
dsharpe@lawla.com
601 Poydras Street, Suite 2775
New Orleans, LA  70130
Telephone: (504) 568-1990
Counsel for plaintiff,
Hornbeck Offshore Operators, LLC

---

[42] See Franco v. Mabe Trucking Co., 3 F.4th 788, 796 (5th Cir. 2021) (Finding that 28 U.S.C. §1631 applied to transfers made to cure lack of personal jurisdiction).

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of April, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Adelaida J. Ferchmin*